Filed 11/13/23  Hussein v. Razin CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AHMED D. HUSSEIN,<br><br>    Plaintiff, Cross-defendant,<br>    and Appellant,<br><br>        v.<br><br>SHELDON RAZIN et al.,<br><br>    Defendants, Cross-complainants,<br>    and Appellants. | G061491, G061681<br><br>(Super. Ct. No. 30-2013-00679600)<br><br>O P I N I O N |

Appeal from two postjudgment orders of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed in part, reversed in part, and remanded.

Latham & Watkins, Michele D. Johnson, Peter A. Wald, Andrew R. Gray, and Whitney B. Weber for Defendants, Cross-complainants and Appellants.

Susman Godfrey, Stephen E. Morrissey, Bryan J.E. Caforio, and Kemper Diehl for Plaintiff, Cross-defendant and Appellant; Ahmed D. Hussein in pro. per.

*        *        *

The parties challenge the trial court's denial of their respective motions for costs. (Code Civ. Proc.,[1] § 1032.) The parties' costs motions, and each party's competing motion to tax the other's costs, followed prolonged litigation spanning nearly a decade in which plaintiff and cross-defendant (and on appeal, respondent and appellant), Ahmed D. Hussein, ultimately failed to prove his misrepresentation and constructive fraud claims against Quality Systems, Inc. (QSI), but defeated the cross-complaint against him for breach of fiduciary duty as a QSI director.

As we explain, under the prevailing cost provision in section 1032, subdivision (a)(4), and longstanding authority, "when neither the plaintiff nor the defendant who has filed a cross-complaint prevails, the defendant is the prevailing party entitled to costs." (*McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1454 (*McLarand*).) Under that code section QSI was entitled to its costs as a matter of law. QSI is the prevailing party even though Hussein was awarded $11 million in costs and attorney fees in an arbitral proceeding to recoup costs in defending against QSI's cross-complaint, since those separate arbitral cost proceedings were never "in" the trial court for purposes of adjudicating or confirming the award within the meaning of section 1032, subdivision (a)(4), which involves designation of the party gaining a "net monetary recovery" as the prevailing party "in any" action or proceeding before the trial court.

Instead, Hussein pursued recovery through arbitration on his own, separate and apart from the jury's adjudication of his misrepresentation and constructive fraud

---

[1] All further statutory references are to the Code of Civil Procedure.

claims, and also from the bench trial adjudication of QSI's cross-complaint against him for breach of his fiduciary duty as a QSI director.

The trial court, however, properly denied QSI's motion for enhanced costs (expert witness fees) under section 998 following a pretrial offer of compromise that Hussein rejected. We therefore affirm the trial court's cost orders in part, reverse them in part, and remand the case for the trial court to award QSI its costs as the prevailing party.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Twenty years ago, the Supreme Court in *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167 (*Small*) authorized "holder's actions"; in such an action, a shareholder who alleges he or she refrained from selling shares in reliance on false

---

[2] Appellants Sheldon Razin and Steven Plochocki challenge the trial court's blanket order denying QSI recovery of its costs (which they sought in a single motion with QSI) on grounds that Hussein was the prevailing party with a net monetary recovery. Razin and Plochocki contended in a separate section of their joint appellate brief with QSI that the trial court could not conclude Hussein was the prevailing party with a net monetary recovery *as to them* because they were not parties to the New York arbitration in which Hussein received his indemnification award. This appellate challenge is mooted by our reversal on grounds that, as a matter of law, QSI, Razin, and Plochocki were the prevailing parties in the action below by virtue of successfully defending against Hussein's complaint, notwithstanding that all three parties lost on their joint cross-complaint against Hussein for breach of fiduciary duty. Razin's death during the pendency of this appeal does not change or otherwise affect the fact that his and Plochocki's appellate challenge is moot.

We are aware that in a related appeal between the parties that is currently pending before us on Hussein's challenge to the jury's verdict against him on his underlying lawsuit (*Hussein v. Razin* (Nov. 13, 2023, G061617) [nonpub. opn.]), the parties have agreed that "all costs at issue were incurred or would be paid by QSI." We see no need, however, to formally take judicial notice in this appeal of such details on our own motion because it will be for the trial court on remand to sort out QSI's entitlement to costs—and similarly Plochocki's and Razin's estate's right to costs if they insist they were separately entitled to them based on their costs motion with QSI.

3

representations about the company's financial performance can bring a claim for fraud or misrepresentation under California law.  (*Id.* at p. 171.)

Ten years ago, in October 2013, Hussein filed his holder's action alleging claims of misrepresentation and constructive fraud against (1) QSI; (2) its founder and largest shareholder, Sheldon Razin; and (3) its chief executive officer at the time in question, Steven Plochocki.  (*Husssein v. Quality Systems, Inc.* (Oct. 8, 2019, G055891) [nonpub. opn.] (*Hussein I*).)  The complaint alleged that "[h]ad Hussein never heard or relied upon Defendants' representations about QSI in late 2011 . . . [¶] . . . [and] throughout 2012[,] he would have continued working with Jones Trading to sell his 9,333,700 QSI shares."  (*Hussein I, supra*, G055891.)

QSI, Razin, and Plochocki filed a cross-complaint against Hussein approximately a year later.  The gravamen of the cross-complaint was that Hussein, a QSI director, breached his fiduciary duty to the company by margining his QSI shares, i.e., pledging them as security for loans he obtained through several of his brokerage accounts.  (*Hussein I*, *supra*, G055891.)  Hussein used the loan proceeds in part to pay off other loans that, as the trial court later described, "'he had in Egypt at a higher rate . . . .'" (*Ibid.*)  Among other damages, the cross-complaint sought disgorgement of the "'spread"' between the interest rates on Hussein's Egyptian and U.S. loans, approximately 6.5 percent and 1 percent respectively, which QSI estimated netted Hussein $2 million in unwarranted savings through his alleged breach of fiduciary duty by margining his shares.  (*Ibid.*)

In 2015, QSI obtained a favorable summary adjudication ruling disposing of Hussein's holder's cause of action.  The trial court concluded that "'in light of the undisputed evidence of Plaintiff's long standing battle with, and extreme distrust of, QSI's leaders, along with Plaintiff's sophistication [as an investor] and desire to seek control of the [QSI] board,"' Hussein "'could not have justifiably relied on Defendants'

alleged misrepresentations"' and, therefore his holder's claim failed. (*Hussein I, supra*, G055891.)

The matter proceeded to a bench trial on QSI's cross-complaint. QSI sought equitable disgorgement of money Hussein saved on the loan spread, plus disgorgement of Hussein's directorship salary. Having heard the evidence, the court found that "'[e]quity does not demand that for some reason [Hussein should] give QSI the benefit that he got from getting a lower interest rate in the United States compared to the Egyptian rate"' and that there was "'no benefit that QSI should have gotten that instead Mr. Hussein got."' (*Hussein I, supra*, G055891.)

The court also found that Hussein's directorship income was essentially a salary because "'that was [his] job,"' but that, while from the perspective of QSI's management and others including other board members, Hussein "'was a pain in everybody's backside,"' he was nevertheless "'a working, practicing member of the board,"' and there was no basis to forfeit his salary since QSI failed to show a breach of fiduciary duty. (*Hussein I, supra*, G055891.)

At the close of the bench trial, Hussein sought attorney fees, arguing he was entitled to them under the terms of his directorship indemnification agreement because he prevailed on the cross-complaint. "The trial court denied Hussein's request 'without prejudice' to Hussein subsequently 'fil[ing] an action for breach of the Indemnification Agreement.' The court ruled that this was the 'proper course' for Hussein to seek indemnity fees under the agreement, rather than by his post-trial costs motion."[3] (*Hussein I, supra*, G055891.)

---

[3] As we discuss below, Hussein never attempted to file a complaint, a cross-claim against QSI's breach of fiduciary duty complaint against him, or other pleading to seek to have the trial court enforce the indemnity agreement, whether by a cause of action for declaratory judgment, breach of contract, or otherwise. Instead, he elected to enforce the agreement through its arbitration provision, which we also discuss more fully below.

After the conclusion of the bench trial, the trial court entered judgment on its earlier summary adjudication of Hussein's holder's claim and on the bench trial result. Both Hussein and QSI appealed, with Hussein challenging the summary disposition and QSI the bench trial finding against it.

We resolved the appeals in *Hussein I*. As to the holder's action, we explained that "[o]n our de novo review, we believe the issue is close, but conclude QSI did not meet its burden as the moving party to establish as a matter of law that Hussein could not prove reasonable reliance on QSI's alleged misrepresentations." (*Hussein I, supra*, G055891.) While "QSI presented what appeared to be a strong case for summary judgment by excerpting," for example, "letters Hussein sent the SEC and NASDAQ," we found that close review of the letters and other evidence submitted by QSI showed fatal "ambiguity, precluding judgment as a matter of law for QSI." (*Ibid.*) As to a letter which involved "squabbles and jealousies involv[ing] private jets and corporate boards," we found "a reasonable jury could view the letter as being limited in scope to travel policy complaints and allegations of favoritism and board extravagance." (*Ibid.*) "[B]ecause the letter gave no hint of concern about QSI's sales data and sales pipeline—the core subjects of alleged QSI misstatements Hussein later claimed he relied on—a reasonable jury could discount the importance of the letter to the litigation." (*Ibid.*) With these ambiguities in its evidence, QSI did not establish it was entitled to judgment as a matter of law on the question of reliance for his holder's claim. (*Ibid.*)

Our opinion in *Hussein I* further explained that "[a]lternate grounds advanced by QSI based on lack of the necessary specificity in pleading a holder's claim or inability to prove damages also fail to support summary judgment." (*Hussein I, supra*, G055891.) We also found no merit in QSI's appellate challenge to the trial court's ruling after a bench trial on QSI's cross-complaint. (*Ibid.*) Additionally, we upheld the court's ruling denying Hussein attorney fees at that time because, pending "*any appeal therefrom*," the bench trial result on QSI's cross-complaint was not yet "*the final*

*disposition of the Proceeding*" when Hussein made his motion, as required by the terms of his indemnity agreement with QSI to trigger his right to indemnification. (*Ibid.*)

Our disposition in *Hussein I* reversed the trial court's summary adjudication of Hussein's holder's action and affirmed the trial court's judgment after the bench trial on QSI's breach of fiduciary duty claim against Hussein.

On remittitur, Hussein renewed his motion in the trial court for indemnification. The court deferred ruling on the motion. The court noted that it was not the bench officer that heard QSI's cross-complaint against Hussein and concluded that resolving Hussein's motion would require "really look[ing] at that indemnification agreement" and that "the appropriate time to do it is after the entire case is complete."

Counsel for Hussein objected that QSI was applying the indemnity agreement unequally, with Razin and Plochocki "continuing to receive the benefits of the same indemnification [provision] through trial while Mr. Hussein is denied those benefits." Counsel added that "if Mr. Hussein needs to bring a separate lawsuit or arbitration to obtain his indemnification rights, he will do so."

The matter proceeded to a jury trial on Hussein's holder's claim. After a three-week trial in which the jury heard from 17 witnesses, the jury returned a defense verdict. Responding to questions on the special verdict form, the jury did not reach the issue of whether Hussein relied on any statements by Plochocki, Razin, or other QSI personnel in deciding against selling his QSI shares; instead, it determined that, even if he did, none of the statements were false or misleading. Hussein's appeal of the judgment entered on the jury's verdict is now pending before this court.

Meanwhile, almost exactly one year before the jury rendered its verdict in July 2021, Hussein had already initiated arbitration proceedings under his indemnity agreement with QSI seeking indemnification for his attorney fees and costs in successfully defending against QSI's cross-complaint. The terms of the indemnity agreement provided that, "'at his option,'" Hussein had the right to seek adjudication of

7

his indemnification claim "'by a court"' or through arbitration. (*Hussein I, supra*, G055891.) Hussein chose the latter and commenced American Arbitration Association arbitration proceedings in New York in July 2020.

Hussein alerted the arbitrator that, with our opinion in *Hussein I* affirming the bench trial result, his victory in defending against the cross-complaint was final. The arbitrator found as to attorney fees that "[t]his is not a 'fee-shifting' case in which a tribunal is asked to fix a reasonable fee for a prevailing party in a disputed matter . . . . Instead, it involves [QSI's] contractual obligation to provide full indemnification of all Expenses actually and reasonably incurred" by Hussein, including a "multiplier of three" that Hussein's attorneys negotiated in their "contingent fee agreement" to represent him in defending against the cross-complaint.

The arbitrator awarded Hussein more than $11 million in indemnification for defending against QSI's cross-complaint. This consisted of more than $10 million for "legal fees," which was comprised of "a base fee of $2,498,813.13, trebled to $7,496,439.38, and interest of $2,862,976.37." A further $1,010,507.68 in "indemnification (including interest) for other expenses" brought the award to its grand total of $11,369,923.42. The arbitrator entered the award on September 2, 2021, and QSI paid the award in full by the end of the month.

Over the course of approximately another year of proceedings, the parties filed their respective motions for costs and to tax each other's costs that are the subject of this appeal. The trial court issued two detailed minute orders denying each side's request for costs and granting each side's motion to tax the other's costs, with the result being that the court awarded no costs.

First, the court denied QSI's costs motion, including expert witness testimony fees and other costs that QSI sought after Hussein rejected its section 998 pretrial settlement offer. The trial court explained the background of its ruling as follows: "Much of the costs sought to be charged [by QSI] are pursuant to an unaccepted

8

offer under . . . section 998. The defendants served the plaintiff with a 998 offer to settle the litigation for $4.5 million. It was rejected. The plaintiff[] lost at trial on the complaint." "An offer made under . . . section 998 must be made in good faith; and it must be reasonable and carry with it the reasonable prospect of acceptance." The trial court then concluded: "The offer made here was neither reasonable nor made in good faith, and there could be no reasonable belief that it would be accepted."

The court explained its thinking: "This litigation has stretched over eight years. It was filed under a novel theory—as a holder's action—a type of action authorized by the California Supreme Court some years ago but which had never been litigated in the state. The plaintiff sought roughly $450 million. And given the statements made by the Court of Appeal in its opinion ordering this matter to proceed to trial, the claim was well within reason to have been brought and maintained. There was also a history involving these parties before other courts strongly suggesting that if the facts could be proved the plaintiff would be in for a large payday. Further, and as the defendants could easily guess, the amount offered would not have covered even the costs the plaintiff had incurred just to get his day in court." As a result, the court found QSI was not entitled to its post-offer costs under section 998.

The court also denied QSI its costs under section 1032, finding that QSI was not the prevailing party in the action though it defeated Hussein's holder's claim.

The court found it dispositive that "the plaintiff was successful on a claim that went to arbitration. In that matter, the plaintiff was awarded over $11 million. [¶] Under Code of Civil Procedure section 1032, subdivision (a)(4), the court has no discretion to deny prevailing party status to one who qualifies. It is well settled that when there are competing claims for monetary claims, courts look to the net monetary recovery. [Citation.] Here, when the two results are compared, the plaintiff received the net monetary recovery and thus qualifies as a matter of law as the prevailing party."

9

The court acknowledged that "the two claims were not in direct opposition," recognizing obliquely that Hussein had not filed any affirmative pleading for indemnification in the trial court. Nevertheless, the court held that Hussein's victory in the arbitral forum qualified to constitute a "net monetary recovery" for purposes of determining a prevailing party in actions or proceedings before the trial court under section 1032, subdivision (a)(4). The court reasoned that the jury and bench trials, together with the arbitration in New York, "both were part of an on-going, epic saga between two men—Hussein and Razin. Under the circumstances of this case, it would make no sense to separate them, or to treat them as different matters."

The court then turned to and resolved in a separate order Hussein's costs motion, which Hussein filed after the court entered its ruling on QSI's motion. The court set out the background of its order by noting that "[t]he cost bill filed by Hussein is based on this court's prior finding that he was the prevailing party," at least insofar as he gained a monetary recovery in the arbitration, whereas QSI recovered nothing in any of the three proceedings: the jury trial, the bench trial, or the arbitration. Hussein did not seek double-recovery in the trial court of the same costs he recovered in the arbitration, but rather sought his costs in prosecuting the holder's action. The trial court observed, "Essentially, he is claiming an entitlement to costs in that part of the action that he lost."

The court denied Hussein's motion. "It is the court's understanding that Hussein received costs and an award of attorney fees in the two parts of this case that he won [recovering in the arbitration both his costs for the bench trial and for the arbitration itself]. It is inconceivable that he would also be statutorily entitled to those costs he incurred in that part of the action he lost simply because he had obtained a 'net recovery' when the action was viewed as a whole. Moreover, it is not just that he lost the holder's action. He lost on the most basic of issues: The jury determined there had been no false representation."

10

The court explained it "went back and re-read the seminal case for holder's actions in California—*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167. *Small* was a badly splintered opinion, and other than allowing a holder's action in California, it provided no real guidance. There was not, for example, any consensus as to what damages were available in such an action or how such damages would be calculated. But what was clear from the various opinions was that the Supreme Court was very concerned that a plaintiff would use a holder's action to seek damages in a case where there had not been, as here, any misrepresentation. [¶] The court has considered the purpose of the holder's action and the factual finding of the jury. The court finds that although Hussein may qualify as a prevailing party under the net monetary recovery theory for purposes of defeating the defendants' cost bill, in light of the rationale of *Small* and the fact Hussein was compensat[ed] for his costs and attorney fees in that part of the case he won, viewed in context he is not a prevailing party entitled to costs solely on the holder's action, which he lost." Consequently, the trial court granted QSI's motion to tax Hussein's costs.

Both sides now appeal.

## DISCUSSION

1. *Costs under Section 1032*

QSI contends it was the prevailing party in the action below, and therefore it is entitled to its costs as a matter of law. We agree.

Generally, the trial court's prevailing party determination, "'along with its award of fees and costs, is reviewed for abuse of discretion.'" (*Sharif v. Mehusa, Inc.* (2015) 241 Cal.App.4th 185, 191 (*Sharif*).) "When, however, the determination that a litigant is a prevailing party involves the interpretation of a statute, the issue concerns a matter of law that is reviewed de novo." (*Ibid.*) "Assuming the 'prevailing party' requirements are met, the trial court has *no* discretion to order each party to bear his or

11

her own costs of suit." (Fairbank, Wegner & Wegner, Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2023) ¶ 17:205, p. 17-36; see, e.g., *Michell v. Olick* (1996) 49 Cal.App.4th, 1194, 1198.)

Section 1032, subdivision (b), provides in part that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." As relevant here, the statute defines the "prevailing party" as the one with "a net monetary recovery," if any, or in the alternative, the "defendant where neither plaintiff nor defendant obtains any relief." (§ 1032, subd. (a)(4).) Relief may be in the form of a monetary recovery, but also "'includes, among other remedies, . . . specific performance, [an] injunction, or the reformation or rescission of a contract.'" (*Childers v. Edwards* (1996) 48 Cal.App.4th 1544, 1549 (*Childers*).)

As this court has explained, the statute's reference to neither a plaintiff "nor [a] *defendant* obtain[ing] any relief" (§ 1032, subd. (a)(4), italics added) implicitly contemplates scenarios in which the defendant "files a cross-complaint against the plaintiff because affirmative relief cannot be claimed in the answer" (*McLarand, supra*, 231 Cal.App.3d at p. 1454 [citing code section governing answers, § 431.30, subd. (c)]).

For purposes of a cost award, "there is a single prevailing party." (*Sharif*, *supra*, 241 Cal.App.4th at p. 194.) Thus, in *McLarand* we rejected the notion that "when a defendant files a cross-complaint against a plaintiff, and neither party prevails on its action, both parties are 'prevailing parties' under section 1032 and both are entitled to an award of costs." (*McLarand*, *supra*, 231 Cal.App.3d at p. 1453.) Instead, section 1032, subdivision (a)(4), grants prevailing party status to the defendant in such cases, i.e., the prevailing party is the "'defendant where neither the plaintiff nor the defendant obtains any relief.'" (*McLarand,* at p. 1454.) As we held in *McLarand*, "when neither the plaintiff nor the defendant who has filed a cross-complaint prevails, the defendant is the prevailing party entitled to costs." (*Ibid.*)

12

Based on the foregoing authority, QSI was the prevailing party as a matter of law when it defeated Hussein's holder's action—unless Hussein gained a "net monetary recovery" in the proceedings before the trial court. For prevailing party purposes under section 1032, subdivision (a)(4), a "net monetary recovery" trumps a stalemate in which "neither the plaintiff nor the defendant obtains any relief" because the latter category does not apply when there has been relief in the form of a monetary recovery.

Here, however, Hussein did not gain a net monetary recovery over QSI within the meaning of section 1032. "A fundamental tenet of statutory construction is that, if possible, significance should be attributed to every word, phrase and sentence of an act." (*McLarand*, *supra*, 231 Cal.App.3d at p. 1454.) Section 1032 governs cost awards involving a "'Complaint,'" which term the statute expressly defines to include "a cross-complaint," and section 1032 also specifies that it applies to "a complaint in intervention" and that "'Defendant' includes a cross-defendant," but it does not mention arbitration petitions or answers, nor arbitral petitioners or respondents. (See § 1032, subd. (a)(1)-(3).) Nor does it suggest it is applicable to determine costs based on proceedings before other tribunals, whether by complaint, cross-complaint, a complaint in intervention, or in some other manner.[4]

---

[4]    Conceivably section 1032's prevailing party calculus may include the results of arbitration or mediation of complaints, cross-complaints, or other matters that begin in the trial court and over which the trial court retains jurisdiction to confirm or deny the award, but we do not consider this question as it is not before us. Hussein suggests that, before resorting to arbitration, his attorney "informed the Court that Hussein might choose to pursue arbitration on the indemnification issue, *subject to the Court's retention of jurisdiction to enforce an arbitration award*." (Italics added.) Hussein's citation to the record does not support his claim that his turn to arbitration was conditional on anything the court did. In any event, as we discuss below, Hussein points to no authority that the trial court *could* retain jurisdiction to confirm or deny arbitration of a cross-claim or cross-complaint that he never filed in response to QSI's cross-complaint.

13

The fact that subdivision (b) of section 1032 provides that a prevailing party "is entitled as a matter of right to recover costs in any action or proceeding" does not change our analysis. We interpret actions and proceedings referred to in the phrase, "in any action or proceeding," to mean those "in" the trial court for adjudication or resolution "in" that forum (*ibid.*), and we interpret the right to costs as a prevailing party to be a right to costs incurred "in" proceedings before the trial court, not to relief that may or may not have been sought or obtained outside the trial court's domain. The rules of civil procedure—including section 1032—govern matters before California courts, not those before other adjudicatory bodies. (See, e.g., §§ 22-23 [defining "action" and "special proceeding" for purposes of California law, not other purposes].) We therefore similarly interpret the "net monetary recovery" for purposes of determining a prevailing party under section 1032, subdivision (a)(4), to be "net" of the proceedings *in the trial court*, not elsewhere.

This conclusion is consistent with the meaning of "relief" in the phrase "obtains any relief" in subdivision (a)(4) of section 1032, which has been construed to refer to "'the assistance, redress, or benefit which a complainant seeks *at the hands of* a court . . . .'" (*Childers*, *supra*, 48 Cal.App.4th at p. 1549, italics added.) As we observed in *Hussein I*, Hussein was entitled under the terms of his indemnity agreement to adjudication of his indemnification claim "'by a court' or, 'at his option, [he] may seek' arbitration . . . ." (*Hussein I, supra*, G055891.) Hussein chose the latter, taking his indemnity claim to the American Arbitration Association (AAA).

The relief he gained through AAA arbitration was not "at the hands of" the trial court. The arbitrator awarded Hussein indemnification not only for his attorney fees waived in defending against QSI's cross-complaint, but also all of his "Expenses Reasonably Incurred in Defense of th[at] Cross Claim." This latter sum totaled more than $1 million "as indemnification (including interest) for other expenses"; these expenses apparently included Hussein's court costs in the bench trial.

14

The arbitrator scrupulously allowed Hussein "indemnification only for Expenses reasonably incurred in defense of [QSI's] cross claim, which must be separated from the costs of Mr. Hussein's affirmative [holder's] claim against [QSI in the jury trial]." We see nothing in section 1032's costs provisions to suggest that this arbitration result should factor into a calculation of the "net monetary recovery," if any, achieved by affirmative "relief" for either party "in" proceedings before the trial court. In other words, we see no basis in the terms of section 1032 to deprive QSI of its costs as the prevailing party in the trial court where, on the claims adjudicated by the trial court, QSI was entitled to its costs under subdivision (a)(4) as the "defendant where neither plaintiff nor defendant obtains any relief" on claims before the court.

Our conclusion is consistent with the well-established rule in California which allows defendants who defeat a plaintiff's claims to recover their costs even when they fail to prevail on their counterclaim or cross-complaint against the plaintiff. (*Schrader v. Neville* (1949) 34 Cal.2d 112, 114 (*Schrader*); *McLarand*, *supra*, 231 Cal.App.3d at pp. 1454-1455.)

In *Schrader*, the Supreme Court declined to find any significance in whether the defendant's cross-claim was asserted as a "counterclaim" or as a "cross-complaint." (See *Schrader*, *supra*, 34 Cal.2d at pp. 114-115.) At the time, a counterclaim was understood to be a "'cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim.'" (*Id.* at p. 114.) There, confronted with a competing claim arising from the same car accident, the Supreme Court observed that if not for the plaintiffs' complaint, the defendants "might not have sued to recover damages." (*Id.* at p. 115.)

However, once the Nevilles were "made defendants in the action [by virtue of the Schrader plaintiffs' complaint], they were compelled to then assert any claim which they might have against the Schraders arising out of the collision," or risk losing the claim because "all causes of action arising out of an automobile accident are part of

15

one 'transaction' within the meaning of the code sections relating to cross-complaint and counterclaim." (*Schrader, supra,* 34 Cal.2d at p. 115.)  The court  held that, whether labeled a counterclaim or, as the defendants there had done, as a cross-complaint, the distinction was immaterial.   "'[T]he "net result" of a judgment which awards nothing to plaintiff is favorable to the former.  Although the defendant[s] did not recover on [their] cross-complaint, [they were] the prevailing party in the court below because plaintiff[s] w[ere] denied recovery against [them].'"  (*Ibid.*)

As we observed in *McLarand*, this rule has persisted through the different iterations of section 1032.  (*McLarand*, *supra*, 231 Cal.App.3d at p. 1455.)  "The Legislature is deemed to be aware of existing judicial decisions interpreting a statute at the time legislation is enacted and to have enacted and amended statutes in light of such decisions" and "legislative enactments will not be construed so as 'to overthrow long-established principles of law unless such [an] intention is made clearly to appear either by express declaration or by necessary implication.'"  (*Ibid.*)  In the absence of any legislative amendment to section 1032 subsequent to *McLarand* (or *Schrader* earlier), the legislative intent regarding that section remains clear:  when there is no net monetary recovery by either party, the defendant is entitled to recover its costs as the prevailing party in the action.  QSI was therefore entitled to its costs as the prevailing party.

Hussein argues the arbitration award was "part of the Superior Court litigation" because he "pled his entitlement to indemnification for his costs and fees defending against the Cross-Complaint as an affirmative defense."  But it remains as true today as it was when this court issued its opinion in *McLarand* that "Affirmative relief may not be claimed in the answer."  (§ 431.30, subd. (c); see *McLarand*, *supra*, 231 Cal.App.3d at p. 1454.)

Hussein never pled a cause of action here for breach of the indemnity agreement, either in an independent complaint or as a cross-claim in response to QSI's cross-complaint against him for breach of fiduciary duty.  He does not suggest QSI's

16

cross-complaint mentioned the indemnity agreement in any way. Nor was the cross-complaint "on" the indemnity agreement, alleging its breach. To the contrary, QSI's cross-complaint alleged a tort, i.e., breach of his fiduciary duty, not a breach of the indemnity agreement or any other contractual obligation.

The trial court that conducted the bench trial of QSI's cross-complaint advised Hussein to file a complaint or cross-claim for breach of the indemnity agreement when it denied his motion for costs under the indemnity agreement as premature. (*Hussein I, supra*, G055891.) More specifically, the court denied Hussein's request for his attorney fees "'without prejudice' to Hussein subsequently 'fil[ing] an action for breach of the Indemnification Agreement.' The court ruled that this was the 'proper course' for Hussein to seek indemnity fees under the agreement, rather than by his post-trial motion." (*Ibid.*) Instead, Hussein elected to go to arbitration. Under these circumstances, we cannot say that any dispute about the terms of the indemnity agreement or a claim for indemnification under it was ever before the trial court. The indemnity agreement was never a part of the superior court action involving Hussein's holder's claim and QSI's tort claim for breach of fiduciary duty.

It is true that a new bench officer included this statement in the trial court's final judgment preceding the appeal in *Hussein I*: "Hussein is presently pursuing attorneys' fees and costs incurred in connection with the Cross-Complaint under his Indemnification Agreement with QSI in a separate arbitration proceeding, *and the Court retains jurisdiction to confirm the ultimate arbitration award*." (Italics added.) But Hussein never brought adjudication of any claim under the indemnity agreement within the court's "jurisdiction." There is, therefore, no merit in Hussein's claim that adjudication of his indemnity claim was "part of the Superior Court action." As a result, there is no merit in his claim that he should be deemed the prevailing party in that action as a whole based on his net monetary recovery in the arbitral forum.

17

2.      *Costs under Section 998*

Hussein contends the trial court properly rejected QSI's motion for costs under section 998, while QSI argues the court erred in denying its bid for costs under that statute. The issue is not mooted by our determination that QSI is entitled to recover its costs as the prevailing party under section 1032 because section 998 authorizes enhanced costs not available under section 1032, namely, expert witness fees.

Section 998 applies most commonly to authorize a defendant's recovery of certain costs even when the plaintiff prevails at trial. Specifically, the defendant may recover costs it incurs after the plaintiff rejects a pretrial settlement offer, where the plaintiff's monetary recovery does not surpass the defendant's offer. (§ 998, subd. (c)(1).) That portion of section 998 is not implicated here, but the same subdivision also provides for enhanced costs when the defendant is the prevailing party. Specifically, when the plaintiff fails to recover more than the defendant offered, the court "may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial . . . or during trial . . . ." (*Ibid.*)

"'As recognized in numerous Court of Appeal decisions, the clear purpose of section 998 . . . is to encourage the settlement of lawsuits prior to trial.' [Citation.] 'Section 998 achieves its aim by punishing a party who fails to accept a *reasonable* offer from the other party.'" (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 129.)

The offering party has the burden of demonstrating that the offer is legitimate under section 998, and so "a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation." (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799.) Additionally, ""'a good faith requirement'" is read into section 998, requiring that "'the settlement offer be 'realistically reasonable under the circumstances of the particular case'"" and that there be ""some reasonable prospect of

18

acceptance.'"" (*Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 143.) ""'[A] party having no expectation that his offer will be accepted 'will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees.'"" (*Ibid.*) Whether an offer is reasonable and made in good faith is a matter left to the trial court's sound discretion. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 700 (*Elrod*).)

As QSI acknowledges under *Elrod*, the discretionary standard means that to some degree "the reasonableness of an offer may lie in the eye of the beholder." (*Elrod*, *supra*, 195 Cal.App.3d at p. 699.) Nevertheless, QSI contends the trial court erred in finding a lack of good faith or reasonable expectation its offer would be accepted based on its nominal amount in comparison to the damages Hussein sought and his significant expenses incurred, as the court observed, "just to get his day in court."

QSI emphasizes authority that a section 998 offer should "not be evaluated simply in comparison to the judgment [plaintiff] sought," but instead its legitimacy should be judged based on "the likelihood that [plaintiff] would prevail at trial" (*Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1485-1486) rather than on other considerations (*Culbertson v. R.D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 (*Culbertson*)). Thus, "[w]hen a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer." (*Ibid.*)

What QSI overlooks, however, is that in addition to Hussein's incurred costs and the magnitude of his claim, the trial court also based its finding on the "history involving these parties before other courts strongly suggesting that if the facts could be proved the plaintiff would be in for a large payday." Indeed, in federal securities litigation premised on the damages the same allegedly fraudulent misstatements made by Plochocki and other QSI personnel caused to the QSI stock portfolio held by two public

19

entity investment funds, QSI settled that case for $19 million after the Ninth Circuit reversed a summary judgment ruling in QSI's favor.  (See *In re Quality Systems, Inc. Securities Litigation* (9th Cir. 2017) 865 F.3d 1130 (*Quality Systems*).)

There, the Ninth Circuit stated unequivocally that a jury could find the "statements of Plochocki and other QSI officers were inconsistent with real-time financial information and were materially false or misleading."  (*Quality Systems*, *supra*, 865 F.3d at p. 1144.)  This finding likely led to QSI's decision to settle that matter and, with this "blood in the water," QSI could not reasonably expect a nominal overture to Hussein (one percent of the damages he claimed, supported by a battery of expert witness testimony) would be accepted or regarded by a trial court as being made in good faith. This is particularly true where Hussein was QSI's longtime second-largest shareholder, behind only Razin, its founder, and yet QSI settled with the smaller pension fund shareholders in *Quality Systems* for an amount that nearly quadrupled the $4.5 million QSI offered Hussein.

QSI attempts on appeal to rehabilitate its offer to Hussein by emphasizing that it included not just "$4.5 million in cash," but also "the right to maintain and pursue his indemnification claim in separate arbitration proceedings before AAA New York, and a release of all claims against him relating to the litigation, including any right QSI Parties would have to costs if they prevailed at trial."  QSI suggests that "[a]ltogether, the Offer [it made under section 998] presented considerable value, potentially up to $20 million."

We are not persuaded.  The $11 million that Hussein recovered in the New York arbitration, and which QSI silently incorporates in its $20 million calculation, had nothing to do with the value of his holder's claim.  To the contrary, it was indemnification for his expenses in defending against QSI's unsuccessful breach of fiduciary duty claim, which was not related to the alleged misstatements by Plochocki or others that undergirded Hussein's and the *Quality Systems* plaintiffs' fraud claims.  Thus,

20

subtracting that amount from QSI's $20 million figure reduces the claimed value of its offer to $9 million—less than half of what QSI paid the *Quality Systems* plaintiffs with smaller holdings. The trial court could conclude even this sum was not reasonably calculated to gain Hussein's acceptance.

Finally, just as a plaintiff's incurred costs are not dispositive in valuing a case, by parity of reasoning neither are a defendant's costs. (See *Culbertson*, *supra*, 190 Cal.App.3d at p. 710.) Therefore, QSI's attempt to bolster the value of its offer by including "any right QSI Parties would have to costs" must be discounted. Thus, the $9 million figure (after Hussein's $11 million arbitration recovery is subtracted from QSI's $20 million estimate) is reduced to a ballpark figure approaching the $4.5 million offer by QSI. However tenuous Hussein's claims, "[even if] tenuous indeed, having in mind the enormous exposure[,] the trial court could find that [QSI] had no expectation that its offer would be accepted." (*Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63; see also *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 ["A plaintiff may not reasonably be expected to accept a token or nominal offer from any defendant exposed to this magnitude of liability unless it is absolutely clear that no reasonable possibility exists that the defendant will be held liable"].) The *Quality Systems* settlement having amply demonstrated a reasonable possibility of liability, the trial court could reasonably conclude QSI's comparatively lowball offer to Hussein was not made in good faith. For all the foregoing reasons, we find no error in the trial court's denial of its motion for costs under section 998.

## DISPOSITION

The trial court's cost orders are affirmed to the extent they denied QSI its motion for enhanced costs for witness fees under section 998. The court's order denying QSI's costs as the prevailing party under section 1032 is reversed. The matter is

21

remanded for the court to determine and enter costs in favor of QSI. QSI is entitled to its appellate costs.

GOETHALS, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.